White v. The Chicago, St. Louis and Pittsburgh Railroad Company.

Judgment affirmed.

Filed Feb. 27, 1890.

No. 14,807.

## WHITE v. THE CHICAGO, ST. LOUIS AND PITTSBURGH RAILROAD COMPANY.

RAILROAD.—*Right of Way.—Appropriation of.—Assessment of Damages.— What Included in.*—Where proceedings, in pursuance of the statute, to appropriate a right of way and for the assessment of damages sustained by property-owners along the right of way or abutting upon a street upon which the proposed road is to be located, are resorted to, future necessities, as well as the present needs of the company, are conclusively presumed to be taken into consideration, and that where damages are assessed it includes all damages resulting from the construction, and from all necessary and proper use of the right of way on the street or highway by the railroad company for railroad purposes.

SAME.—*Additional Tracks.—Right to Lay.*—Damages resulting from the negligent use of a street or highway by the company, or from an unnecessary change of an established grade of a street, or negligently or unnecessarily obstructing the same are not included, but all damages are included resulting to the property-owner from the legitimate and necessary use of the same for railroad purposes, including the right to lay necessary additional tracks or side-tracks.

SAME—*Additional Tracks.—Additional Damages need not be Assessed for.*—It is not necessary, therefore, as the future business and necessity of the

White *v.* The Chicago, St. Louis and Pittsburgh Railroad Company.

company demands an additional switch, or even an additional track from one station to another, for the company to file an additional instrument of appropriation, and have the additional damages assessed resulting to the property abutting the right of way or street along which such additional track or switch is to be located by reason of its construction.

SAME.—*Side-Track or Switch.—Not Additional Burden.—Recovery of Damages.* —Where a road is located upon a street, instruments of appropriation filed, and damages assessed for injury to the abutting lot-owner, and paid and accepted by him, there can not be a recovery of damages by reason of the location of a side-track or switch on the ground of its being an additional burden not included in the original appropriation.

SAME.—*Side-Track.—Negligent Construction of.*—If in such action the complaint alleges the negligent construction and maintenance of the side-track in an improper manner, unnecessarily obstructing the street, a different question is presented.

DAMAGES.—*Reservation of.—Public Improvements.—Injury to Property-Owners.* —A claim for damages can not be reserved, and when damages are assessed for an injury to property resulting from a permanent improvement, or taken for public use, it bars all actions for future damages.

JUDGMENT.—*Erroneous Conclusions of Law.— When Harmless Error.*—Where a proper judgment is rendered on the facts found, a judgment will not be reversed for error in a conclusion of law stated, for such error is a harmless one.

From the Cass Circuit Court.

*J. C. Nelson, Q. A. Myers, M. D. Fansler* and *J. J. Shaffrey,* for appellant.

*N. O. Ross* and *G. E. Ross,* for appellee.

OLDS, J.—The appellee is the owner of a railroad running on and over Canal street in the city of Logansport. Said street is sixty feet wide, and the main track of said railroad, as originally built and ever since maintained, is located along the center of said street. Appellant is the owner of a lot abutting and fronting on the south side of said street, upon which is situated a dwelling-house in which she resides, and her only means of ingress and egress to and from said lot is from said street. After the construction of the main track of said railroad the defendant company, without any permission of the owner of said lot, and without any

proceedings to condemn the street for the use of said company except the original proceedings when the road was constructed, built a second track, or side-track, along said street, along and upon the south half of said street, south of the main track, in front of the said plaintiff's lot and residence, and has for several years maintained and used the same.

The appellant brings this action for damages sustained by reason of the building and using of said extra or side-track upon the south half of said street in front of her lot.   She alleges the facts in her complaint, and asks for damages sustained.

Issues were joined and a trial had by the court without the intervention of a jury, resulting in a finding and judgment in favor of the defendant below, the appellee.

Upon proper request the court found the facts specially, and stated its conclusions of law.

The appellant excepted to the conclusions of law as stated by the court, also moved for judgment in her favor on the facts found, which motion was overruled, and the ruling assigned as error.

The finding of facts and conclusions of law as stated by the court are as follows :

### FINDING OF FACTS.

The court having been requested by the parties to find the facts, with the conclusions of law thereon, with the view of excepting to the decision of the court upon the questions of law involved in the trial, finds the following facts, to wit:

"*First*. The court finds that the plaintiff is the owner in fee simple of lot four, of James A. Taylor's addition to the city of Logansport, Cass county, Indiana ; that she acquired title thereto on the 4th day of January, 1870, remotely through said Taylor, and has had possession thereof ever since and up to the present time, and that said lot is a part of two lots, on the south side of Canal street, and opposite lots eighteen and nineteen, and was owned by said Taylor in

fee simple during the months of June and July, 1859, and until after January, 1863.

"*Second.* That on the 9th day of June, 1859, the Toledo, Logansport and Burlington Railroad Company filed in the office of the clerk of the Cass Circuit Court the instrument of appropriation, to wit :

" ' *To all Whom it may Concern. Take Notice:*

" ' The Toledo, Logansport and Burlington Railroad Company, a corporation duly organized in pursuance of the general railroad law of the State of Indiana, approved May 11th, 1852, for the purpose of constructing, maintaining and operating a railroad within the State of Indiana, agreeable to their articles of association, has located the line and route of their said railroad over and across the lands and premises hereinafter mentioned and described, and that said company intends to and does hereby, under and pursuant to the provisions of law, appropriate the rights, interests, lands, and premises hereinafter described, for the purpose of constructing, operating, and maintaining their said railroad. Said company not having agreed with the owners of the lands touching the damages which may be sustained by them by reason of the construction of the same, or for the lands, interests, and real estate hereby appropriated as aforesaid, to the end that appraisers may be appointed to assess said damages, if any may be by them sustained, does hereby file these articles of appropriation describing the interests and rights to be appropriated, to wit : (Describing certain lands). Also, in and through Canal street, in the city of Logansport, Cass county, Indiana, so far as said company may be legally liable for damages to the owners of lots and parts of lots on either side of said street, who are as follows, to wit: James A. Taylor, as the owner of two lots on the south side of Canal street, opposite lots eighteen and nineteen, such appropriation to include the right of said company to take materials for the construction and repair of said railroad at any point within fifty feet of the center of said railroad, except along

said street, with the right of way over said tracts of land sufficient to enable said company to construct and repair said road, and the right to conduct water by aqueducts, and the right to make drains, and to have and to hold said rights, interests and privileges to the use of said company so long as the same shall be required for the uses and purposes of said road, in as full and ample and perfect a manner as may be required for that purpose. Reference being had to the map and surveys of the engineers of said company, showing the line, route, and location of said railroad, and to the certificate of location attached thereto and being part thereof, filed in the office of the clerk of the Cass Circuit Court for a more particular description of the said tracks and parcels of land so taken, and rights and interests so appropriated by said company for the purposes aforesaid.

" ' In witness whereof the said company has caused these presents to be signed by their president, this 21st day of June, 1859. D. M. DUNN, *President.*'

" A copy of the map, and survey of the line and route of the location of said railroad is attached hereto as a part of said instrument of appropriation, and marked ' A.'

" That on the 29th day of June, 1859, the foregoing instrument of appropriation was served on James A. Taylor, by the delivery to him of a copy thereof, and on the 1st day of July, 1859, the judge of the court of common pleas, in vacation, appointed three disinterested freeholders of said county appraisers, to assess the damages that said Taylor might sustain by reason of said appropriation; that afterwards, on the 4th day of July, 1859, said appraisers made their appraisement and filed it in the office of the clerk of said county, in which they gave and assessed in favor of said Taylor as the damage he would sustain as the owner of said lots, by such appropriation, the sum of one hundred dollars, which sum was afterward, on the 10th day of October, 1859, paid to and accepted by him as and for his said damage.

" *Third.* That during the years 1859 and 1860, said Toledo, Logansport, and Burlington railroad company completed said railroad by building a single track along Canal street, near the center of the street, so that cars could run over the same, and that it has been used and operated as a railroad ever since, and is now so used, and that the defendant is, and has been since April 2d, 1883, the owner of, and operating the same as the remote vendee of said Toledo, Logansport, and Burlington Railroad Company.

" *Fourth.* That the plat hereto attached, marked ' B,' is a correct representation of said railroad tracks of the defendant as used and operated on the 2d day of April, 1883, when it first commenced operating said road, and as it has remained ever since, through Canal street in front of the plaintiff's property ; that the lot marked ' 4 ' on the south side of Canal street represents the plaintiff's lot, and so much of it as is marked with diagonal lines represents her dwelling thereon ; that the north red line represents the original main track of said railroad, the south rail of which is twenty-nine feet north of the north line of the plaintiff's lot, and said Canal street is sixty-six feet wide; that the south red line represents a side-track that was put in and constructed where it now is in the year 1871, by the remote grantors of the defendant, without other or further condemnation or appropriation proceedings than hereinbefore mentioned, and without the consent of the plaintiff, and she, at the time, made objections to the men engaged in the work, and it was extended from Third street to a point nearly opposite the east line of lot number 21, as marked on said plat, the east end being designated by a small black mark or line at right angles with the red line ; that in the year 1882, and before this defendant owned or had possession of said road, said south track was extended to the shops connected with said road, a distance of about one mile, and since that time has been used as a track for trains going east, and the north track for trains going west ; that the end of the ties are fourteen feet and the south rail

of the south track fifteen feet and two inches north of the north line of the plaintiff's lot, and that the distance between the center lines of the north and south tracks above mentioned is twelve feet and two inches.

"*Fifth.* That at the time said side-track was constructed, in the year 1871, the Columbus, Chicago and Indiana Central Railway Company was the owner of said railroad; that under an order and decree of foreclosure of the circuit court of the United States for the District of Indiana, said railroad, with all things thereto appertaining, was sold, and, on the 21st day of February, 1883, was conveyed to William L. Scott, Charles J. Osborn and John S. Kennedy, who, on the 17th day of March of the same year conveyed the same to the defendant, and that on the 2d day of April, 1883, the defendant took possession of said railroad and has operated it ever since, and has maintained, kept up and used said side-track ever since.

"*Sixth.* That the rails and ties of said side-track are, and have been ever since the 2d day of April, 1883, from six to seven inches above the grade and surface of said Canal street in front of plaintiff's property, and that by reason of the construction and maintenance of said side-track the plaintiff has been interrupted in the use of said street, and access to her property through and across said street with any kind of wheeled vehicles has been made much more difficult and dangerous; that ever since the construction of said railroad, or soon thereafter, telegraph poles were placed by the Western Union Telegraph Company and maintained along the outer edge of the sidewalk that passes in front of and adjoining the plaintiff's property and south of said second track on that side of the street, but none of the poles were placed in front of the plaintiff's premises, on which the wires were held that were used in the operation of said railroad by the several companies operating said road ever since its completion in the year 1860.

"*Seventh.* That the rental value of plaintiff's property, by

reason of the foregoing facts, has been reduced in value since the 2d day of April, 1883, up to the 17th day of August, 1887, in the sum of three hundred and fifteen dollars, and she has sustained damages in the said sum of three hundred and fifteen dollars.

".The court being sufficiently advised, does now conclude the law to be on the facts found in this cause as follows:

"*First.* The plaintiff is not entitled to maintain an action for damages for trespass. Her remedy, if any she has, is in an action for compensation by way of damages for the real estate occupied and used by the defendant for railroad purposes, or by having the damages assessed under the statute relating to the assessments of damages for property taken under the right of eminent domain. She can not maintain an action either for trespass or in ejectment, or for an injunction.

"*Second.* I find for the defendant that it is entitled to recover its costs.

The map referred to as "Exhibit A," in the finding, is a map of the road as it was located for a distance beyond the city limits on either side, having a line designating the center of the right of way or road which runs along Canal street, on the outside of the platted in-lots of the city, two lines, one on each side of the center, showing the width of said right of way, also showing the grades at various points. The map contains no statement of fact as to whether there was to be one track or a number of tracks, except that there was but the one track platted. The map marked "B" indicates the location of the lot, the railroad, and shows the main track and side-track, and their relation and proximity to the lot owned by the appellant.

The findings of facts show that there were proceedings instituted to condemn the land to be used for the construction and building of the railroad, and that damages were assessed for the injury to the lot in question, then owned by one Taylor, and afterwards purchased and now owned by the appellant. The primary and material question to be determined

is as to whether the appellant has any right of action for damages accruing to her on account of the location and maintenance of the extra track or switch.

The statute in regard to acquiring the right of way for the construction of railroads was in force, as it now is, at the time the railroad operated by the appellee was constructed. We quote a part of section 3903, defining the powers, rights and privileges of railroad companies. It provides:

"Every such corporation shall possess the general powers, and be subject to the liabilities and restrictions expressed in the special powers following."

The third specification grants the right "To purchase, and, by voluntary grants and donations, receive and take, and by its officers, engineers, surveyors, and agents, enter upon, take possession of, hold, and use all such lands and real estate and other property as may be necessary for the construction and maintenance of its railroad stations, depots, and other accommodations necessary to accomplish the objects for which the corporation is created; but not until the compensation to be made therefor," etc.

The fourth specification grants the right "To lay out its road not exceeding six rods wide, and to construct the same; and for the purposes of cuttings, embankments, and procuring stone and gravel, it may take as much more land, within the limits of its charter, in the manner provided hereinafter, as may be necessary for the proper construction and security of the road."

"*Fifth.* To construct its road upon or across any stream of water, watercourse, road, highway, railroad, or canal, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or watercourse, road or highway, thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises."

Section 3907 provides for the appropriation of land for the use of the company.

It is well settled that a street is a highway, and that the fee to the street is in the adjacent land-owner, subject to an easement in the public (*Cox* v. *Louisville, etc., R. R. Co.,* 48 Ind. 178; *Common Council, etc.,* v. *Croas,* 7 Ind. 9), and thus damages may be properly assessed in favor of the lot-owner for the use of a street by a railroad company. And there can be no doubt but that the company may, by proper proceedings, have the damages assessed to an adjacent lot-owner where the street is appropriated for the purpose of constructing a railroad along and over the street adjacent to the lot.

The lot-owner has an interest in land to be appropriated or used, and the company may have the damages assessed the same as if the appropriation was of a portion of the lot, and this proposition is not controverted by counsel in this case.

The finding of facts shows that an application was made in pursuance of the statute to appropriate the property, and due notice given, and the damages to the lot in question assessed and paid by the company and accepted by the owner. The question is presented as to what rights the railroad company making such appropriation acquired in the street. The statute authorizes the location of a railroad upon a street; it likewise authorizes the appropriation of a right of way for the construction of a railroad six rods in width, and as much land in addition thereto as may be necessary for the construction and proper use and operation of the railroad.

The application for appropriation in this case states that " such appropriation to include the right of said company to take materials for such construction and repair of said railroad at any point within fifty feet of the center of said railroad, except along said street, with the right of way over said tracts of land sufficient to enable said company to construct and repair said road, and the right to conduct water

by aqueducts, and the right to make drains, and to have and to hold said rights, interests and privileges to the use of said company so long as the same shall be required for the use and purposes of said road in as full and ample and perfect a manner as may be required for that purpose." And under this application damages resulting therefrom to the lot in question were assessed in favor of the owner, and were by him accepted. By this appropriation the railroad company obtained the right to lay their track upon and use the street in question for the purpose of constructing and operating their railroad in as full and perfect a manner as might be required for the purpose of operating the road.

In treating of the assessment of damages, in 2 Wood's Railway Law, pp. 897, 898, section 256, it is said: "The presumption is that every injury which, in judgment of law, would result to the other adjacent property of the owner from taking a part of his land for the construction of the road, and from the use of it in a proper manner when constructed, was foreseen by the appraisers, and included in their first estimate. The award made by the statutory tribunal is exhaustive; and the land-owner can not maintain an action for damages which should have been but were not assessed and allowed in that proceeding; even though he claimed them there, and they were erroneously disallowed. His remedy for such error is by steps to review the award. Where the appraisal of land damages was reduced below what it otherwise would have been, by the representations of the agents of the company that the road would be constructed in a particular manner, made at the time of the appraisal to the commissioners, and such representations were not fulfilled in the actual construction of the road, whereby the plaintiff sustained serious loss and injury, it was held that the adjudication of the commissioners was a merger of all previous negotiations upon the subject, and that no action could be maintained for constructing the railway contrary

to such representations, provided it was done in a prudent and proper manner."

In the case of *C. R. I. & P. R. W. Co.* v. *Smith,* 111 Ill. 363, it was held, that where a person conveys a right of way over his land it will be conclusively presumed that all the damages to the balance of the land, past, present and future, were included in the consideration paid him for his conveyance, the same as an assessment of damages on a condemnation would be presumed to embrace, and that a grant of a right of way for all uses and purposes of the company, or in any way connected with the construction, preservation, occupation, and enjoyment of said road, is broad enough to embrace all uses for railroad purposes, however much increased by any other companies authorized by law. It is further held, that where a right of way is condemned for public use over a tract of land, the owner will be entitled to compensation, not only for the value of the land taken, but also for all damages to the residue of the tract, past, present, and future, which the public use may thereafter reasonably produce.

In *Babcock* v. *Western R. R. Co.,* 9 Met. 553 (43 Am. Dec. 411), it is held that a grant of power to accomplish any particular enterprise, especially one of a public nature, carries with it authority to do all that is necessary to effect the principal object.

In Pierce Railroads, p. 177, it is said : "The final award is a bar to an action for any injury which the appraisers could have legally estimated, irrespective of their action upon the claim for injury, or even their knowledge or ignorance of its existence. They are conclusively presumed to have performed their duty, except in a direct proceeding to set aside the award, or on appeal."

The doctrine is well settled by the decisions of our own court, that a claim for damages can not be reserved, and when damages are assessed for an injury to property resulting from a permanent improvement, or taken for public use, it bars

all actions for future damages.    See *City of Lafayette* v. *Nagle,* 113 Ind. 425, and authorities cited in that case.

In the appropriation of a right of way, or the location of a railroad along, upon and over a street or highway, the location and appropriation are made with a view of future use and occupancy by the railroad company to the full extent and purpose as the future operation and business of the company may demand.    It gives to the company, as against the property-owners affected thereby, the right to use such right of way or street or highway, upon which the road is located, a full and complete right to use the same for railroad purposes in as full and ample a manner as the necessity of the company may demand.    It is manifest when the road is located that it can not be successfully operated with but one line of track without any turn-outs or switches.    It is likewise evident that with the future development and improvement of the country along the line of the road the business of the road will increase, and with such increase of business a necessity will arise for additional tracks and switches.

When proceedings to appropriate a right of way and for the assessment of damages sustained by property-owners along the right of way or abutting upon a street upon which the proposed road is to be located, are resorted to, future necessity as well as the present needs of the company is conclusively presumed to be taken into consideration, and that when damages are assessed it includes all damages resulting from the construction, and from all necessary and proper use of the right of way on street or highway by the railroad company for railroad purposes.    This would not include damages resulting from the negligent use of a street or highway by the company, or from an unnecessary change of an established grade of a street, or negligently or unnecessarily obstructing the same ; but it does include all damages resulting to the property-owner from the legitimate and necessary use of the same for railroad purposes, including

the right to lay necessary additional tracks or side-tracks. That this is the true rule to apply in such cases we think there can be no doubt, and such rule is, as we believe, supported by the weight of authority. It was certainly not contemplated that after a company had ·condemned a right of way for railroad purposes, in no way limiting the use to which the same should be put in the future, but stipulating in the instrument of appropriation that it was to be in as full and ample and perfect a manner as may be required for railroad purposes, it is necessary as the future business and necessity of the company demands an additional switch, or even an additional track from one station to another, for the company to file an additional instrument of appropriation, and have the additional damages assessed resulting to the property abutting the right of way or street along which such additional track or switch is to be located by reason of its construction, and we think there can be no difference between the rights of a land-owner abutting on the right of way and abutting on the street in cases where damages had been assessed. In such case damages have been assessed for the necessary use of the road for railroad purposes.

We have not set out the complaint in full in this case; we do not deem it necessary. The complaint is upon the theory that the appellant is entitled to damages by reason of the location of the side-track, or switch, along and upon said street, on the grounds that it is an additional burden not included in the original appropriation; and, taking the theory we do of the law, there can be no recovery on such grounds. The facts found show the location of the road, instruments of appropriation filed, and damages assessed for the injury to the lot in question, and paid and accepted by the then owner; that the appellee has succeeded to all of the rights of the original owners of the road. The court rendered a proper judgment on the facts found, and a judgment will not be reversed for error in a conclusion of law stated, if a proper

judgment is rendered on the facts found, as such error is harmless.

Counsel have discussed at length the remedy in case the side-track constituted an additional burden for which the owner ought to recover damage; but, as we hold it constitutes no additional burden for which damages may be recovered, we are not called upon to decide what is the proper remedy. There being no wrong, there is no remedy.

If the complaint alleged the negligent construction and maintenance of the side-track in an improper manner, unnecessarily obstructing the street, it would present a different question.

The court having rendered a proper judgment on the facts found, there is no error for which the judgment should be reversed.

Judgment affirmed, with costs.

Filed Feb. 6, 1890.


ON PETITION FOR A REHEARING.

OLDS, J.—Counsel for appellant insist that the court misconstrued the theory of the complaint. In this we think they are mistaken. The complaint charges that " upon the 2d day of April, 1883, and ever since the defendant has wrongfully, unlawfully and without right, kept up and maintained a second additional track in the center of the south half of said Canal street," etc.; then it is alleged that a portion of the ties and all of the rails are above ground, which second railroad track has been so kept up and maintained, etc.; then it alleges the use of the track for running trains of cars and standing engines upon it, obstructing the street, making it impossible to cross the street for many hours without crawling under the cars so wrongfully kept upon the track; that by reason of the running of engines and trains of cars wrongfully as aforesaid, upon said second track so wrongfully maintained as aforesaid by the defendant, the plaintiff's said house is

rendered grimy and dirty by the dust raised by the defendant's engines and cars, and the smoke which exhales from said engines penetrates into her said house to her great damage, etc.

There are no allegations in the complaint that the running of engines and cars upon such second track, and allowing them to stand upon the same, are not within the ordinary and necessary use of the road.    There is no allegation that the second track was improperly constructed.    Taking the complaint as a whole, there is but one construction which can reasonably be placed upon it, and that is the one we placed upon it in the original opinion, that it proceeds upon the theory that the plaintiff is entitled to damages by reason of the location of the second track along and upon said street, on the grounds that it is an additional burden not included within the original appropriation, and that the second track is unlawfully placed upon the street, and it does not proceed upon the theory that the second track is lawfully upon the street, but improperly constructed and an unlawful use made of the track; besides, the case was argued upon the same theory upon which it was decided.

Counsel for appellant, in their original brief, in stating the theory of the case, say:  "That the appellee had for a number of years rightfully maintained a single track of its road through the center of said street; that ever since the year 1883, the appellee has unlawfully and without right kept and maintained an additional track in the center of the south half of said street, in front of and adjacent to the plaintiff's lot and dwelling-house."    It is further stated in the brief that the first question presented is,  " Can the plaintiff maintain this action for damages caused by the defendant in using the entire south side of the street in front of plaintiff's lot with a second or additional railroad track without further proceedings to have her damages assessed?"  " Does the fact that the appellee or its grantors caused damages to be assessed for the right to lay and maintain a single

track along the center of the street give it the right to lay additional tracks?" These statements from the original brief of counsel show conclusively that counsel took the same theory of the question presented in the case as did the court in rendering its decision, and it comes in bad grace now for counsel to change base and insist upon another theory on the petition for a rehearing, after a suggestion in the decision that the complaint might have been so framed as to present a different question.

It is suggested that we ought to decide upon the question of limitation. Having decided that the plaintiff can not maintain this action at all, there is no question of limitation to be passed upon. Counsel, in effect, ask the court to pass upon the question as to when some other form of action would be barred by the statute of limitations. This we can not do.

The petition for a rehearing is overruled.

Filed Feb. 26, 1890.